UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MELISSA SUE R.,[1]

                         Plaintiff,                      DECISION AND ORDER

-vs-

                                        1:23-CV-01325-MAV

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

## INTRODUCTION

On December 26, 2023, Melissa Sue R. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Supplemental Security Income ("SSI") benefits.[2] ECF No. 1. Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 7 (Plaintiff); ECF No. 13 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's motion is granted.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

[2] The regulations governing the evaluation of a claimant's eligibility for SSI payments are found in Part 416 of Title 20 of the United States Code of Federal Regulations. The regulations governing the evaluation of a claimant's eligibility for disability insurance benefits ("DIB") under Title II of the Social Security Act are found in Part 404. Because the relevant regulations in both Parts are practically identical, any citations in this decision to regulations in Part 404 should be read to also reference the regulations applicable to SSI benefits in Part 416 unless otherwise indicated.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

### I. Plaintiff's Application

Plaintiff filed her application for SSI on March 28, 2020, alleging a disability onset date of December 15, 2019. Administrative Record ("AR"), 105, 804.[3] At the time of application she identified the following conditions that she claimed limited her ability to work: major depressive disorder, anxiety, and "hear[ing] voices." AR at 814, 823. Plaintiff later added physical conditions to her disability claim, including polyarthropathy and, most significantly, for purposes of this action, fibromyalgia. In December 2020, the Commissioner found that Plaintiff was "not disabled," and denied her claim for SSI payments. AR at 88–104. Plaintiff requested a reconsideration of the initial determination, but in September 2021, the Commissioner again found that she was "not disabled." AR at 107–28.

### II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff appeared via video conference on October 19, 2022, for a hearing before an Administrative Law Judge ("ALJ"). AR at 47-68.    Plaintiff and a vocational expert ("VE") testified.

---

[3] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

When asked by the ALJ what medical conditions prevented her from working, Plaintiff mentioned anxiety, panic attacks, stiffness and pain in her joints, depression, difficulty trusting people, auditory hallucinations, difficulty concentrating, and post-traumatic stress disorder ("PTSD"). Plaintiff indicated that she took ibuprofen for pain, but generally refused to take prescription medications for physical or mental ailments, since the thought of taking such medications made her anxious. AR at 53, 54, 61–62. At the time of the hearing, Plaintiff was not receiving any type of specialized treatment, therapy or medication for her mental impairments. AR at 54. Nor was she seeing a specialist for her polyarthropathy or fibromyalgia conditions, after having been terminated as a patient by her rheumatologist over a payment dispute. AR at 53-54, 58. She stated, however, that she was in the process of obtaining an appointment with a different rheumatologist. AR at 53-54, 58.

In terms of her daily activities, Plaintiff testified that she lived with her fiancé; usually had no problem with selfcare and hygiene activities such as showering and getting dressed; performed household chores; performed shopping; and drove her own car. AR at 55-56. However, she stated that she could not stand for long periods to perform chores, that she relied on her fiancé to do lifting, and that she experienced pain and stiffness if she remained in a car for too long. AR 55-56. She stated that she could remain sitting for between twenty and thirty minutes, AR at 56, after which she needed to get up and move around for approximately thirty minutes before sitting again. AR at 57. Plaintiff stated that she had recently begun experiencing loss of

mobility in her hands, which caused her on one occasion to spill her coffee. AR at 58. She stated, though, that she could lift a gallon of milk. AR at 58. Plaintiff assumed that her hand problems were related to arthritis or fibromyalgia, but acknowledged that she had not received any medical treatment relating to her hands. AR at 58.

The ALJ also heard testimony from vocational expert Victor Alberigi ("the VE"), who testified that a hypothetical claimant, with an RFC identical to that which the ALJ ultimately found Plaintiff to have, and with no past relevant work, would nevertheless be capable of performing various jobs. AR at 65. In particular, the VE testified that such claimant could perform the "medium job" of janitor; the "light" jobs of housekeeper; and the "sedentary" job of document clerk. AR at 65.

## III. The ALJ's Decision

On January 17, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for SSI. AR at 18–42.

Applying the Commissioner's "five-step, sequential evaluation process,"[4]    the

---

[4] The Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

ALJ found, at the outset, that Plaintiff had not engaged in substantial gainful activity since her application date, March 28, 2020. AR at 20. Then, at step two, the ALJ determined that Plaintiff had several severe impairments, namely, polyarthropathy, fibromyalgia, anxiety disorder, depressive disorder, PTSD, and obesity. AR at 20–21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 22–27.

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity[5] ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), "inclusive of light and sedentary work," except Plaintiff could only frequently climb and stoop; remember, understand, and carry out simple instructions; use judgment to make simple work-related decisions; adapt to routine and occasional changes in the workplace; and have occasional interaction with supervisors, coworkers, and the general public. AR at 27.

In making this RFC finding, as it relates to Plaintiff's physical impairments, the ALJ first made a very detailed summary of Plaintiff's hearing testimony concerning her subjective complaints, including her assertion that she was usually in pain that was measured at eight on a scale of one-to-ten; that she experienced increased pain and stiffness from prolonged sitting; that when walking, she felt heaviness in her legs and pain radiating from her hips into her legs; that she was

---

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

losing mobility in her hands; and that she required help lifting anything heavier than a gallon of milk. AR at 29.

The ALJ found, however, that such testimony was not entirely consistent with the medical evidence and other evidence, which he also reviewed in great detail. AR at 30-33. In that regard, the ALJ indicated that although Plaintiff carried diagnoses of polyarthropathy and fibromyalgia, with such conditions having been confirmed with lab testing and positive trigger-point findings, notes from treating and examining physicians did not reflect that she experienced significant pain or functional limitations from those conditions. *See, e.g.,* AR at 30 ("[T]he record documents relatively minimal treatment with a specialist consisting of visits with rheumatologist Edgardo Salvador, M.D. [("Dr. Salvador")], from August 11, 2021 to March 25, 2022 . . . . Similarly, the treatment records with her various primary care providers generally show sporadic complaints of physical pain with relatively minimal remarkable objective findings.").

The ALJ observed, for example, that Plaintiff only made "sporadic" complaints of pain to her doctors (AR at 30); that "abdominal, musculoskeletal, and neurologic examinations" on May 23, 2019, were "unremarkable" (AR at 22); that on June 13, 2020, Plaintiff wrote, in an Adult Function Report, that "walking made her feel better, [though] she lacked motivation and was tired most of the time" (AR at 28); that during consultative examinations on August 21, 2020 and July 22, 2021, Plaintiff reported being able to independently cook, clean, do laundry, shop, shower, dress, and drive a car (AR at 24); that on September 14, 2021, Plaintiff reported having lifted

6

"small children" without adverse effects (AR at 32); that at a doctor visit on May 12, 2022, Plaintiff reported that she was "still working at Walgreens" and "doing well" taking college classes (AR at 26); and that on June 1, 2022, Plaintiff told her treating doctor that she "controlled" her fibromyalgia and polyarthopathy with ibuprofen (AR at 32).

Further, the ALJ provided a comprehensive summary of the evidence relating to findings by Plaintiff's treating physician and consultative examiner:

> In sum, the record reveals a short course of treatment with rheumatologist Dr. Salvador from August 11, 2021 through March 25, 2022, despite her report to consultative examiner Dr. [Russell] Lee[, M.D. ("Dr. Lee"),] of a history of pain starting variously in 2002, 2016, 2019, or 2020. Contrary to her testimony of stiffness and pain restricting her ability to sit, walk, lift, and bend, his clinical examinations showed no neurologic deficits, no indications of any balance or gait abnormalities, and an initial finding of only "mild" tenderness to motion and palpation of the upper and lower extremities, 16 out of 18 tender points, and her elevated BMI. Moreover, it is notable that [Dr. Salvador's] initial recommended treatment involved only folic acid supplementation, Vitamin B12 supplements, and Vitamin D supplements, along with continuation of her previous use of ibuprofen. Although a subsequent visit showed "moderate" tenderness, it also showed only 10 out of 18 tender points, along with continued findings of intact neurologic functioning, "good" grip strength, and no documented findings regarding gait or balance to substantiate her reports of dizziness or gait abnormalities. At the most recent visit in March 2022, the only additional finding was "mild" weakness in the left upper extremity with no other neurologic deficits. At the same time, her primary care provider generally noted normal gait and no acute distress, which is contrary to her testimony that her average pain was an 8 on a 10-point scale, as well revealing only sporadic complaints of pain to her primary care providers. The most significant findings occur at the first consultative examination with Dr. Lee on August 21, 2020. Even then, he found no neurologic deficits, normal gait, no use of any assistive

7

devices, intact dexterity of the hands and fingers, and intact grip strength. At the subsequent consultative examination with Dr. Lee on June 10, 2021, she reported no cooking, cleaning, or doing laundry, but the clinical examination revealed even less remarkable objective findings on the clinical examination, compared to the prior consultative examination, consisting of only an elevated BMI, limited squat, limited lumbar ROM, positive SLR, and tenderness over the lumbar spine, along with otherwise full ROM in all other joints and the cervical spine, no neurologic deficits, no muscle atrophy, normal gait, intact grip strength bilaterally, and intact dexterity of the hands and fingers. Based on this evidence, I have fully accounted for the polyarthropathy, fibromyalgia, and obesity by limiting her to medium exertion, which requires lifting, carrying, pushing, and pulling 25 pounds frequently and 50 pounds occasionally, sitting for 6 hours, and standing and/or walking for 6 hours, with frequent stooping and climbing.

AR at 33.

The ALJ also evaluated the medical opinion evidence concerning Plaintiff's physical limitations, consisting of opinions by consultative examiner Lee and State Agency examiners Gary Ehlert, M.D. ("Ehlert") and H. Miller, M.D. ("Miller"). The ALJ explained that he found Dr. Lee's opinions only "partially persuasive," but found Dr. Ehlert's and Dr. Miller's opinions more persuasive:

On August 21, 2020, consultative examiner Dr. Lee opined that the claimant had moderate limitation to activities involving prolonged sitting, prolonged standing, bending, and lifting, along with mild to moderate limitations in activities involving reaching over her head (C5F/7-8).

I find that Dr. Lee's August 2020 opinion is only partially persuasive, insofar as the terms mild to moderate are vague and not expressed in vocationally relevant terms. Moreover, to the extent that "moderate" limitations, particularly as to sitting, prolonged standing, lifting, and the opined upon limitations in reaching overhead, would preclude her from performing medium exertion, the overall evidence does not support

8

it. As noted in detail above, the record reveals a short course of treatment with rheumatologist Dr. Salvador from August 11, 2021 through March 25, 2022, despite her report to consultative examiner Dr. Lee of a history of pain starting variously in 2002, 2016, 2019, or 2020. Contrary to her testimony of stiffness and pain restricting her ability to sit, walk, lift, and bend, his clinical examinations showed no neurologic deficits, no indications of any balance or gait abnormalities, and an initial finding of only "mild" tenderness to motion and palpation of the upper and lower extremities, 16 out of 18 tender points, and her elevated BMI. Moreover, it is notable that the initial recommended treatment involved only folic acid supplementation, Vitamin B12 supplements, and Vitamin D supplements, along with continuation of her previous use of ibuprofen. Although a subsequent visit showed "moderate intact neurologic functioning, "good" grip strength, and no documented findings regarding gait or balance to substantiate her reports of dizziness or gait abnormalities. At the most recent visit in March 2022, the only additional finding was "mild" weakness in the left upper extremity with no other neurologic deficits. At the same time, her primary care provider generally noted normal gait and no acute distress, which is contrary to her testimony that her average pain was an 8 on a 10-point scale.

On June 10, 2021, consultative examiner Dr. Lee opined that the claimant had moderate limitations for activities involving sitting, standing, bending, and lifting (C13F/4).

I find that Dr. Lee's June 2021 opinion is partially persuasive, but it is less persuasive than his earlier opinion, based upon the fewer remarkable findings on the clinical examination at the second consultative examination. Moreover, the use of "moderate" continues to be vague and not in vocationally relevant terminology, and to the extent that it was intended to provide for a residual functional capacity of less than medium exertion, with more restrictions then frequent stooping and climbing, the overall evidence of record does not support it, including the relatively minimal treatment with a rheumatologist who documented no neurologic or gait abnormalities, the routine and conservative treatment consisting initially of vitamin supplementation and one visit with a prescription for gabapentin, her sporadic complaints

of pain to her primary care providers who also documented relatively minimal findings, and indications of use of ibuprofen with good effect.

On November 18, 2020 and June 14, 2021, State agency medical consultants Gary Ehlert, M.D., and H. Miller, M.D., opined that the claimant could perform medium exertion with frequent climbing ramps, stairs, ladders, ropes, and scaffolds (C3A/11-13; C6A/16-18). I find that these opinions are persuasive because they supported them by reviewing the evidence of record and providing a detailed rationale with citation to the relevant evidence. Moreover, the overall evidence of record generally supports them. As noted above, the record shows relatively minimal treatment with a rheumatologist starting in August 2021 despite alleging an onset almost two years prior, documentation of no neurologic or gait abnormalities by the rheumatologist, the routine and conservative treatment consisting initially of vitamin supplementation and one visit with a prescription for gabapentin, her sporadic complaints of pain to her primary care providers who also documented relatively minimal findings, and indications of use of ibuprofen with good effect.

AR at 37-38.

At step four of the sequential evaluation, the ALJ found that Plaintiff had no past relevant work. AR at 39. However, at step five, based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found there were a significant number of jobs in the national economy that Plaintiff could perform such as housekeeper, document preparer, and janitor. AR at 41. Therefore, the ALJ found that Plaintiff was not disabled, and hence not entitled to SSI payments. AR at 41–42.

On November 3, 2023, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R.

§ 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 1382c(3)(A), a claimant is disabled and entitled to SSI if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for SSI has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. *See also* 42 U.S.C. § 1383(c)(3) (authorizing judicial review of SSI determinations as provided in § 405(g)). The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012).

Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her motion for judgment on the pleadings, Plaintiff presents three issues for the Court's review. First, she argues that the ALJ's evaluation of the "physical opinion evidence" was erroneous, since it focused on the lack of objective evidence supporting her fibromyalgia-related impairments. ECF No. 7-1 at 1, 8-12. Second, Plaintiff contends that the ALJ similarly erred when evaluating her credibility, by again improperly focusing on the absence of objective evidence to support her

fibromyalgia symptoms. *Id.* at 12-13. Third, Plaintiff contends that the ALJ committed additional errors when evaluating the medical opinion evidence, such as by partially discounting a consultative opinion as being vague, without first attempting to seek clarification from the examiner.

The Commissioner, meanwhile, maintains that the ALJ's decision is free from legal error and supported by substantial evidence.

Having carefully reviewed the parties' papers and the relevant sections of the administrative record, the Court finds that Plaintiff's arguments lack merit, and therefore that her motion should be denied, and the Commissioner's motion granted.

## I.   The ALJ's Findings Relating to Fibromyalgia

Plaintiff maintains that the ALJ erred by "focus[ing] nearly exclusively" on the alleged lack of objective findings to support her claimed physical impairments, since fibromyalgia is a condition for which there are usually few objective signs. ECF No. 7-1 at 10. In particular, Plaintiff contends that this alleged "improper focus on [the] lack of objective evidence" tainted the ALJ's evaluation of both the medical opinion evidence and the evidence relating to her credibility. *See, e.g.*, ECF No. 7-1 at 10–11 ("[The ALJ] rejected [Lee's] opinion because 'clinical examinations showed no neurologic deficits, no indications of any balance or gait abnormalities, and an initial finding of only 'mild' tenderness to motion and palpation of the upper and lower extremities,'" while "a subsequent visit showed 'moderate' tenderness, [but] also showed only 10 out of 18 tender points, along with continued findings of intact neurologic functioning, 'good' grip strength, and no documented findings regarding

13

gait or balance to substantiate her reports of dizziness or gait abnormalities.").

## A. Legal Principles

The legal principles applicable to Plaintiff's arguments on this point are well settled in this Circuit:

> To be sure, "[t]he Second Circuit has recognized that 'fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" *Nieves v. Comm'r of Soc. Sec.*, No. 23-CV-5 (JGLC) (BCM), 2024 WL 992197, at *14 (S.D.N.Y. Feb. 20, 2024) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (internal quotations omitted)), report and recommendation adopted, 2024 WL 990125 (S.D.N.Y. Mar. 7, 2024). Accordingly, while a fibromyalgia diagnosis will not alone direct a finding of disability, "the ALJ is not entitled to rely solely on objective evidence--or lack thereof--related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record." *Lara M. v. Comm'r of Soc. Sec.*, No. 522CV01407(AMN/ML), 2023 WL 10365082, at *10 (N.D.N.Y. Dec. 20, 2023) (quoting *Anysha M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0271 (CFH), 2020 WL 1955326, at *3 (N.D.N.Y. Apr. 23, 2020)), *report and recommendation adopted*, 2024 WL 862196 (N.D.N.Y. Feb. 29, 2024).
>
> At the same time, this does not preclude the ALJ from considering a lack of objective evidence in connection with his assessment of a claimant's fibromyalgia. *See Amanda T. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00817 (JGW), 2024 WL 1257408, at *5 (W.D.N.Y. Mar. 25, 2024) ("Contrary to plaintiff's argument that fibromyalgia is based on subjective reports, Social Security Ruling (SSR) 12-2p requires that a claimant demonstrate objective evidence of specific clinical findings associated with fibromyalgia under established medical guidelines . . . . This ruling specifically directs the ALJ to consider all relevant evidence in the longitudinal record, including objective evidence, opinion evidence, statements about symptoms, course of treatment, and daily activities." (citation omitted)); *Joanna O.*, 2024 WL 580348, at *9 ("Thus, even if a claimant had a diagnosis of fibromyalgia, objective findings such as

normal strength, sensation, and range of motion could still indicate that
the condition was not totally disabling.").

*Serena B. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06423 EAW, 2024 WL 3822808, at *6

(W.D.N.Y. Aug. 15, 2024); *see also, Rivers v. Astrue*, No. 07–3104–cv, 280 F. App'x 20,

22 (2d Cir. May 28, 2008) ("[M]ere diagnosis of fibromyalgia without a finding as to

the severity of symptoms and limitations does not mandate a finding of disability.

Unlike the claimant in *Green–Younger*—whose doctor diagnosed her fibromyalgia as

'severe' and the cause of marked limitations in the claimant's activities of daily

living,—the record in this case contains no such finding.").

Nor is an ALJ required to accept a claimant's statements about the severity

and disabling effects of her fibromyalgia pain, where there is conflicting evidence,

such as "only mild or slight symptoms" and activities inconsistent with disabling

pain, casting doubt on such statements. *Rivers*, 280 F.App'x at 22-23 ("Nor was the

ALJ required to credit Rivers's testimony about the severity of her pain and the

functional limitations it caused . . . . Here, the ALJ . . . [noted] that clinical findings

indicate only mild or slight symptoms and Rivers's work activities were not consistent

with those of an individual suffering from disabling pain.") (citation and internal

quotation marks omitted).

In the instant case, the ALJ did not improperly rely just on a lack of objective

evidence, either when evaluating the opinion evidence or when evaluating Plaintiff's

credibility.  Rather, the ALJ properly considered "all relevant evidence, including

the longitudinal treatment record." *Serena B.*, 2024 WL 3822808, at *6.  For

example, the ALJ discussed at length how the evidence as a whole did not support

Plaintiff's subjective claims that her fibromyalgia caused her pain that was usually "about an 8 on a ten-point scale," or that it made it difficult for her to walk and use her hands. AR at 29 (ALJ's summary of Plaintiff's testimony); AR at 30 ("The only remarkable findings on the clinical examination included a BMI of 41.98, lumbosacral tenderness, tenderness in 16 out of 18 tender points, 'mild' tenderness on motion and palpation of the shoulders, elbows, and wrists with no signs of soft tissue swelling, and 'mild' tenderness of the knees, ankles, and feet[.]"); AR at 30 ("On September 9, 2021, . . . examination revealed . . . no acute distress, pleasant demeanor, no tenderness to palpation of the spine, 'no significant joint swelling or tenderness on exam, and full ROM of the peripheral joints[.]"); AR at 31 (observing that on March 3, 2020, "her only complaint was anxiety, and the clinical examination revealed comfortable appearance, no acute distress, walks with smooth, even, and well-balanced gait."); AR at 31 (observing that an examination on April 22, 2021, showed "no acute distress, normal gait, 'mild' tenderness to the knees without swelling, and normal examination of the fingers, wrists, elbows, upper extremities, and ankles.").

The ALJ's ample references, either to the lack of evidence supporting Plaintiff's claim or to actual evidence inconsistent with her claim, were not erroneous simply because they related to fibromyalgia. *See Amanda T.*, 2024 WL 1257408, at *5.

The Court similarly rejects any contention by Plaintiff that this same alleged error by the ALJ caused his findings, concerning the opinion evidence and Plaintiff's credibility, to be unsupported by substantial evidence. On this point, the Court

adopts the reasoning of another decision from this District, which denied a similar substantial-evidence argument, stating:

> Lynn argues that the ALJ erred by finding "that the objective evidence did not support [her testimony that she needed to frequently change positions due to her pain], despite finding that she had the severe impairment of fibromyalgia, which does not present with objective evidence." Docket Item 7-1 at 15. And Lynn is correct that fibromyalgia is often unsupported by objective findings. *See* SSR 12-2p, 2012 WL 3104869, at * 2 (Jul. 25, 2012) ("[Fibromyalgia] is a complex medical condition.... When a person seeks disability benefits due in whole or in part to [fibromyalgia], we must properly consider the person's symptoms...."). But contrary to Lynn's argument, the ALJ did not require objective medical evidence of fibromyalgia to corroborate her complaints; instead, he looked to other evidence to evaluate whether those complaints accurately related her condition.
>
> *   *   *
>
> For example, the ALJ considered Lynn's activities of daily living, her history of conservative pain treatment, the success of her pain treatment, the opinion of consultative examiner John Schwab, D.O., and the prior administrative finding of state agency medical consultant Gary Ehlert, M.D. *See id.* at 25-30. More specifically, the ALJ noted that Lynn experienced improvement in her pain on "her prescribed pain regimen." *See id.* at 27-28; *see also id.* at 483-525 (records of pain specialist Adebukola Abiola, M.D., showing improvement during course of treatment). Likewise, the ALJ noted the largely unremarkable exam findings by Dr. Schwab as well as the fact that Lynn presented to Dr. Schwab with a "history of fibromyalgia that was relieved by medication." *See id.* at 27; *see also id.* at 472 (Dr. Schwab's noting that "[Lynn] gets relief with Lyrica [but] did not know where her trigger points [are].""). And the ALJ noted Dr. Ehlert's conclusion that Lynn could perform medium work with no additional restrictions. . . . So the ALJ's evaluation of Lynn's physical complaints was supported by medical evidence in the record.

*Lynn C. v. Comm'r of Soc. Sec.*, No. 21-CV-00112-LJV, 2023 WL 4082351, at *6

(W.D.N.Y. June 20, 2023); *see also, Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013) ("[T]he ALJ's residual functional capacity determination, which took into account Prince's fibromyalgia, was supported by substantial evidence . . . . Dr. Nader Wassef observed normal reflexes, a full range of motion, and full strength in Prince's extremities, and advised her only to avoid any form of 'extreme body contact.' Similarly, Dr. David G. Welch observed relatively little physical pathology other than a clear-cut diagnosis of fibromyalgia and found that Prince had excellent strength, sensation, and range of motion in her core and in all four extremities.") (citations and some internal quotation marks omitted).

Additionally, the Court finds no merit to Plaintiff's contention that the ALJ's findings are unsupported by substantial evidence because he "ignored" or overlooked "positive findings" from Dr. Salvador. ECF No. 7-1 at 12. Rather, the ALJ's decision includes a comprehensive discussion of Dr. Salvador's findings. AR at 30–31, 33, 37–38. Moreover, Plaintiff has not shown that Dr. Salvador's positive findings necessarily imply greater functional limitations than what the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (the claimant has the burden to prove a more restrictive RFC than that found by the ALJ).

For these reasons, the Court finds no merit to Plaintiff's contention that the ALJ erred by improperly focusing on the lack of objective evidence when evaluating her credibility and the persuasiveness of the medical opinions.

## II. Plaintiff's Other Arguments

Plaintiff alternatively maintains that the ALJ committed other errors when

evaluating the medical opinion evidence. In particular, Plaintiff first contends that the ALJ erred insofar as he partially discounted Dr. Lee's consultative opinions concerning "moderate limitations" as being "vague and not expressed in vocationally relevant terms," without first attempting to seek clarification from Lee. ECF No. 7-1 at 13. Further, Plaintiff asserts that when evaluating Dr. Lee's opinions, the ALJ erred by referring to the "relatively minimal treatment" she received from Dr. Salvador, without acknowledging that she had several visits with Dr. Salvador before such treatment ended because of a payment dispute. *Id.* at 14. Additionally, Plaintiff alleges that when evaluating Lee's opinions, the ALJ "totally failed to acknowledge how consistent they were [with each other] in terms of sitting, standing, bending, and lifting limitations, over the time period spanned between the two opinions." *Id.* at 15. Still further, Plaintiff contends that the ALJ used "circular reasoning" by "rejecting [Dr. Lee's] opinions to the extent they were inconsistent with his previously-determined medium RFC." *Id.* at 16. And, finally, Plaintiff argues that the ALJ improperly relied on his own lay judgment when "rejecting the more restrictive portions of [Dr. Lee's] opinions." *Id.*

However, the Court finds no merit to these arguments. For example, the ALJ was not required to seek clarification from Dr. Lee before partially discounting Dr. Lee's opinions as being vague and not expressed in vocationally-relevant terms. *See, e.g., Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) ("To be sure, a hearing on disability benefits is a non-adversarial proceeding. An ALJ generally has an affirmative duty to develop the administrative record, including when there are

deficiencies in the record. But a deficiency in reasoning by a treating physician is not the same as a gap in treatment records . . . .   [Here,] there was a complete record before the ALJ consisting of medical opinions, treatment notes, and test results from 2016 to 2018 . . . . [the claimant] has not identified any missing medical records that should have been included in the record, and we are aware of none. Accordingly, the ALJ did not err in failing to supplement the administrative record.") (citations omitted).

Similarly, the contention that the ALJ misrepresented the nature of treatment provided by Dr. Salvador, by characterizing it as "relatively minimal treatment," is without merit. As discussed above, the ALJ provided a thorough description of Dr. Salvador's treatment of Plaintiff. AR at 30–31, 33, 37–38.

Further, contrary to what Plaintiff contends, it is evident from the ALJ's lengthy discussion quoted above that Dr. Lee's two opinions were consistent with each other. In fact, the only notable difference was that the second, later opinion included "fewer remarkable findings." AR at 32–33, 37–38.

Finally, the Court does not agree that the ALJ used circular reasoning or improperly relied on his own lay interpretation of the evidence when partially discounting Dr. Lee's opinions. Rather, the ALJ permissibly found Dr. Lee's opinions to be less persuasive than those of Dr. Ehlert and Dr. Miller, that Plaintiff could perform medium work, because they were less well-supported by the evidence as a whole. AR at 37-38. *See, e.g., Camille v. Colvin*, 612 F. App'x 25, 28 (2d Cir. 2016) (finding that the prior administrative findings of non-examining state agency

consultants may outweigh even a treating physician's opinion where they are more consistent with the record evidence).

CONCLUSION

For the foregoing reasons, Plaintiff Melissa Sue R.'s motion for judgment on the pleadings [ECF No. 7] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 13] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:      March 31, 2025
            Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

21